UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

HATTIESBURG DIVISION

ROBERT DEAN COOLEY

and BLAKE DALTON COOLEY, a minor,

by and through ROBERT DEAN COOLEY, his father and next friend

V.  CASE NUMBER: 2:06 cv 251 KS-MTP

JONES COUNTY, MISSISSIPPI; THE JONES COUNTY SHERIFF"S OFFICE; SHERIFF T. LARRY DYKES, in his official capacity as the Sheriff of Jones County, and Individually; THE JONES COUNTY BOARD OF SUPERVISORS; RANDALL KEITH PARKER in his official capacity as a former agent of the Southeast Mississippi Drug Task Force and individually; JASON SCOTT SIMS in his official capacity as a former agent of the Southeast Mississippi Drug Task Force and individually; ROGER WILLIAMS in his official capacity as a former agent of the Southeast Mississippi Drug Task Force and individually; COVINGTON COUNTY, MISSISSIPPI; THE COVINGTON COUNTY SHERIFF'S OFFICE; SHERIFF ROGER WOOD SPEED in his officially capacity as the Sheriff of Covington County, and Individually; THE COVINGTON COUNTY BOARD OF SUPERVISORS; JASPER COUNTY, MISSISSIPPI; THE JASPER COUNTY SHERIFF'S OFFICE; SHERIFF KENNETH CROSS in his officially capacity as the Sheriff of Jasper County, and Individually; THE JASPER COUNTY BOARD OF SUPERVISORS; SMITH COUNTY, MS; SMITH COUNTY SHERIFF'S OFFICE; SHERIFF CHARLIE CRUMPTON, in his official capacity and Individually; SMITH COUNTY BOARD OF SUPERVISORS;  and JOHN DOES 1-15

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS
TO COMPEL RULE 7(a) REPLY TO QUALIFIED IMMUNITY

Come now, the Plaintiffs, by and through their attorney, and file the following response to Defendants' Motions to Compel Rule 7(a) Reply to Qualified Immunity, to-wit:

Qualified Immunity

Government officers and officials are entitled to a defense of qualified immunity where their alleged unconstitutional conduct "does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The primary focus is on the "objective

reasonableness" of the officer's actions in the light of the legal principles that govern his conduct. Anderson v. Creighton, 483 U.S. 635 (1987). Where an objectively reasonable officer would not know that his conduct was unconstitutional because the legal standard had not been clearly established at the time or because the contours of the constitutional right did not provide sufficient notice that his conduct was violative of the right asserted, the officer is entitled to the qualified immunity defense. Id. See also United States v. Lanier, 520 U.S. 259.  In Malley v. Briggs, 475 U.S. 335 (1986), the Court stated that there would be no immunity if the violation of law would be "apparent" to a reasonable officer in light of clearly established law. Immunity is inappropriate where a reasonably competent officer would have known his actions to be in violation of the Fourth Amendment.  Id.

### a.  Clearly established rights

It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer. See Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir. 1998) (parole officer); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997) (police officers); White, 855 F.2d at 961 (same); Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000).  False charges levied against an individual create a classic constitutional violation: the deprivation of his liberty without due process of law. The liberty deprivation is the time he was illegally confined, and the due process violation is the manufacture of false evidence.  Zahrey at 348.

If any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001).   Actions taken in contravention of this prohibition necessarily violate due process

(indeed, we are unsure what due process entails if not protection against deliberate framing under color of official sanction). Id. There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. Id. In each case the government official maliciously abuses a position of trust to induce the criminal justice system to confine and then to prosecute an innocent defendant. Id.

### b. Objectively unreasonable conduct

The relevant inquiry under this prong of a qualified immunity analysis is whether it would be clear to an objectively reasonable officer that his conduct violated the plaintiffs' constitutional rights. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002); see Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

No reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit." Limone v. Condon, 372 F.3d 39 (1st Cir. 2004). When a violation of a fundamental right is so obvious that no half-way intelligent public official could conclude in good faith that his proposed action is constitutional, a public official who does it anyway cannot claim qualified immunity; the purpose of qualified immunity is to protect government officials from liability for conduct they could not reasonably have known was unlawful. Skurstenis v. Jones, 236 F.3d 678 (11th Cir. 2000).

No law enforcement officer could have truly believed that the knowing falsification and omission of evidence was objectively reasonable. Qualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms. The acts and omissions committed by the defendants in this case did not stem from a misunderstanding of their constitutional duties, nor were they undertaken in

furtherance of legitimate public purposes that went awry. Rather, as alleged, the defendants engaged in a deliberate attempt to ensure the prosecution and conviction of innocent men. Such conduct violated the Plaintiffs' constitutional rights with "obvious clarity."

### i.  By the Individual Officers (Parker, Smith and Williams)

Although it should be abundantly clear that Plaintiffs' constitutional rights were violated by the individual officers, Plaintiffs' reiterate the following specific details:

On or about November 16, 2005 Roger Williams, suspended-Commander of the Southeast Mississippi Drug Task Force, and one Crystal Bunch called Robert Dean Cooley and instructed Cooley to meet Bunch at the Mt. Vernon Methodist Church, which is within walking distance from Cooley's home.  Cooley was told to go behind the Church and wait for Bunch.  Unbeknownst to Cooley, his thirteen-year-old son, Blake Dalton Cooley, followed his father to the Church and witnessed all of the events described herein.

Upon arriving at the Church, as he was instructed to do, suspended-Agent Randall Parker emerged from behind the Church and yelled "Sheriff's Department." Parker then ordered Cooley to get on the ground and instructed Agent Scott Sims to "pick up whatever Cooley had dropped".  Cooley contends he had nothing in his hands and dropped nothing.  Cooley was then handcuffed, with his hands behind him.  Some few minutes later, Williams and Bunch pulled up in Williams' county car.

Williams then walked to the back of his county car, opened his trunk and took out some sort of stick or wooden object.  Cooley was standing up at that point.  Williams walked behind Cooley who was still handcuffed, and hit him with the wooden object, the blow being so hard that Cooley fell to the ground.  Williams then continued for several minutes to brutally beat Cooley with the wooden object, delivering between fifty (50) to

sixty (60) blows.

Parker then pulled Cooley up from the ground and told him "This will teach you to do what we want." A deputy sheriff pulled up and transported Cooley to the jail where he was incarcerated while his body turned purple and bruises and abrasions became very obvious. Cooley was finally seen by Dr. Patel at the Jail some time after the incident. At that time, Cooley was still purple, bruised and injured from his shoulders to the waist from the beating.

Cooley was charged with Possession of Cocaine and spent from November 16, 2005 to April 8, 2006 in the Jones County Jail - three weeks of which was spent in solitary confinement.

### ii. By the Sheriffs (Dykes, Speed, Crumpton and Cross)

The Southeast Mississippi Drug Task Force, hereinafter referred to as the "Task Force," was set up in an Interlocal Agreement which was adopted by the individual Board of Supervisors of the counties participating in the Task Force. See Exhibit 1. Under this Interlocal Agreement Sheriff Larry Dykes, Sheriff Roger Wood Speed, and Sheriff Kenneth Cross were members of the Board of Directors of Task Force. See Exhibit 1, p. 4. The Board of Directors was charged with meeting at least once a month to review the activities of the Task Force. See Exhibit 1, p. 4. The Board of Directors was also charged with hiring and supervising the Commander of the Task Force. See Exhibit 1, p. 5.

Upon information and belief Sheriff Dykes was specifically made aware of Deputy Chris Smith beating a handcuffed prisoner while inside the Jones County Adult Detention Center, hereinafter referred to as the "jail." Sheriff Dykes attempted to Order

the Captain of the Jail to come into the jail on his day off to transport a prisoner Smith assaulted to the hospital for medical assistance. The Captain of the jail refused because of Smith's history of assaulting individuals incarcerated in the jail, and the fact he often committed such assaults on the weekend necessitating the Captain come in to work on his day off. Upon information and belief the actions of the Captain at the jail put Sheriff Larry Dykes on actual notice of the brutality which was a regular mode of operations for the Task Force and the deputies, such as Smith, Parker, and Williams.

Upon information and belief the actual notice of the brutality and violation of the civil rights of the arrested Plaintiffs given to Sheriff Larry Dykes from the Captain of the jail acted as constructive notice given to the other members of the Board of Directors of the Task Force at their monthly meetings, as required under the terms of the Interlocal Agreement governing the Task Force and its operations.

Upon information and belief the Board of Directors of the Task Force did not meet during the last twelve (12) months of the Task Force's operations, rather than once a month as required under the Interlocal Agreement. Upon information and belief Sheriff Larry Dykes, Sheriff Roger Wood Speed, and Sheriff Kenneth Cross actively and intentionally failed to supervise the Task Force as required for members of the Board of Directors as set forth in the Interlocal Agreement which set up the Task Force. Upon information and belief had the Board of Directors of the Task Force met as required under the terms of the Interlocal Agreement the Board could have taken steps to ensure the Task Force members complied with the United States Constitution and did not brutalize handcuffed prisoners or plant evidence upon innocent individuals. Upon information and belief the only way Sheriff Larry Dykes could have not been made

aware of the repeated acts of assault upon incarcerated and/or handcuffed prisoners and the planting of evidence engaged in by the members of the Task Force is by actively working to keep from officially finding out about the problems of the Task Force.

Upon information and belief Sheriff Larry Dykes was put upon actual notice of the "tasering" of handcuffed prisoners because at least one of those events occurred in the Jones County jail. The employees of the jail were directed to avoid the members of the Task Force when those Task Force members brought arrestees into the jail. The employees of the jail were agents and employees of the Jones County Sheriff. The Captain of the jail is the Sheriff's agent at the jail. Upon information and belief the Captain of the jail, and through him Sheriff Larry Dykes and the Board of Directors of the Task Force, knew of the repeated brutalities of the members of the Task Force and instructed his employees accordingly so they would not be accused of brutality. Upon information and belief Sheriff Larry Dykes was constructively aware, if not actually aware, of the fact his correctional officers at the jail were distancing themselves from the actions of the Task Force officers, and collecting evidence when prisoners arrived at the jail so as not to be charged with brutality based upon the actions of the Task Force. Upon information and belief the employees of the jail made a practice of photographing and documenting the wounds and injuries evident upon prisoners arrested or transported by members of the Task Force. This occurred when Plaintiff Marty Breazeale was transported to the jail. Upon information and belief the female correctional officer at the jail who processed Plaintiff Breazeale into the jail took numerous photographs of the injuries suffered by Breazeale at the hands of Smith prior to being placed in the jail. Upon information and belief Sheriff Larry Dykes was aware of

the systematic and continuing efforts of his correctional officers at the jail to gather evidence disproving their involvement with the brutality committed by members of the Task Force.

Upon information and belief Sheriff Larry Dykes was made aware of the continual planting of evidence on innocent defendants by the Task Force by members of the general public who complained to him their family members were arrested when they had no contraband on them. Defendants Williams, Smith and Parker pled guilty to the criminal charge of planting evidence upon Plaintiffs. Upon information and belief Sheriff Larry Dykes was made aware of the planting of evidence upon Plaintiff Donald by members of Donald's family.

Plaintiffs would show unto the Court it is impossible for them to be more specific regarding the facts and circumstances of the actual and/or constructive knowledge of Sheriff Larry Dykes, Sheriff Roger Wood Speed, and Sheriff Kenneth Cross without completing the court-ordered discovery on the issue of Qualified Immunity. It is impossible to further detail the malfeasance and misfeasance of the members of the Board of Directors of the Task Force without completing the Discovery ordered by the court on the topic of Qualified Immunity.

Respectfully submitted,

ROBERT DEAN COOLEY

By:_/s/_____
Pamela L. Huddleston
His Attorney

PAMELA L. HUDDLESTON
Attorney at Law
MS Bar No. 99176
Post Office Box 1194
Laurel, MS 39441-1194
(601) 649-9200
(601) 649-9270 fax

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this day electronically filed the above and foregoing Response via the ECF system which gives notice of said filing to all counsel of record.

This the 11th day of April, 2007.

/s/ Pamela L. Huddleston

Attorney for Plaintiffs